In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-096 CV


____________________



BROOKSHIRE BROTHERS, LTD, Appellant



V.



TIMOTHY JAMES WILKES, Appellee






On Appeal from the 1st District Court


Jasper County, Texas


Trial Cause No. 24191






MEMORANDUM OPINION


 Timothy James Wilkes filed suit against Brookshire Brothers, Ltd., for damages
resulting from a slip-and-fall injury he sustained in its store in Kirbyville, Texas. The jury
found in favor of Wilkes and awarded $16,260 in damages. The trial court entered judgment
for Wilkes according to the verdict, plus $1,004.56 in prejudgment interest and adjudged
costs against Brookshire Brothers. Brookshire Brothers appeals claiming the evidence is
legally and factually insufficient to support the jury's verdict. Specifically, Brookshire
Brothers argues there is no evidence, or alternatively insufficient evidence, it had
constructive notice of the hazard.

 In this case, the hazard was scrambled eggs on the floor in front of the deli. The deli
was serving breakfast, which could be taken out or eaten there. Wilkes made his purchase
and was leaving when he slipped and fell on the scrambled eggs. There is no dispute as to
the cause of Wilkes' fall. Brookshire Brothers owed Wilkes a duty to exercise reasonable
care to protect him from dangerous conditions in the store that were known or reasonably
discoverable, but it was not an insurer of his safety. See Wal-Mart Stores, Inc. v. Reece, 81
S.W.3d 812, 814 (Tex. 2002). To prevail, Wilkes had to prove Brookshire Brothers had
either actual or constructive notice of the spill. Id. Wilkes could meet the notice requirement
by showing that Brookshire Brothers placed the eggs on the floor, Brookshire Brothers knew
the eggs were on the floor, or it is more likely than not that the eggs were on the floor long
enough to give Brookshire Brothers the opportunity to discover it. Id. No evidence was
presented that Brookshire Brothers spilled the eggs on the floor or knew they were there. 
Accordingly, Wilkes had to establish the eggs had been on the floor for a sufficient period
of time that Brookshire Brothers had a reasonable opportunity to discover it. 

 The court in Reece reaffirmed the time-notice rule. Id. at 815-16. Further, the court
recognized an employee's proximity to a hazard will often be relevant in determining what
constitutes a reasonable time for a premises owner to discover it. Id. at 816. The court
noted:

 Thus, if the dangerous condition is conspicuous as, for example, a large puddle
of dark liquid on a light floor would likely be, then an employee's proximity
to the condition might shorten the time in which a jury could find that the
premises owner should reasonably have discovered it. Similarly, if an
employee was in close proximity to a less conspicuous hazard for a continuous
and significant period of time, that too could affect the jury's consideration of
whether the premises owner should have become aware of the dangerous
condition. But in either case, there must be some proof of how long the hazard
was there before liability can be imposed on the premises owner for failing to
discover and rectify, or warn of, the dangerous condition. Otherwise, owners
would face strict liability for any dangerous condition on their premises, an
approach we have clearly rejected. 


Id. (footnote and citations omitted).

 Wilkes testified he arrived at the store between 8:30 and 9:00 in the morning. He
went to the deli and placed an order. It took about five minutes for the order to be filled. The
order was placed in a Styrofoam plate that closed at the top and then in a plastic bag. As
Wilkes was leaving, he saw Reverend Woods and walked toward him. He slipped and fell. 
Wilkes testified he did not keep his eyes on the floor and observe everywhere he walked
when he entered the store. He did not visually inspect the area where he had to walk. After
he fell, Woods said there were eggs and Wilkes looked back and saw eggs. Wilkes agreed
with Woods' description that the size of the substance on the floor was between a quarter and
a half-dollar. Wilkes described the eggs as "light grayish green" and "kind of old." Wilkes
said the eggs did not appear fresh. Wilkes testified there was not a family at the tables where
he fell. According to Wilkes, Woods was not seated, but was coming toward him, toward
the tables, when Wilkes saw him. Wilkes testified there were three employees in the deli
area at the time. Wilkes did not know how the eggs got on the floor or how long they had
been there. 

 Reverend Paul Woods testified he purchased breakfast that morning around 8:30 and
sat at a table. As Wilkes was leaving, he came over to Woods' table and was in the process
of greeting Woods when he (Wilkes) fell. Woods testified he had been there for twenty-five
minutes and there was no one sitting at the table next to him who spilled the eggs during that
time. Woods saw the eggs on the floor only after Wilkes fell and said they were
approximately three feet from where he was sitting. Woods said Wilkes could not see the
eggs on the floor. Woods could not testify as to how long the eggs had been on the floor. 

 Brookshire Brothers concedes that Wilkes introduced evidence two Brookshire
Brothers' employees, Brenda Thornton and Ruth Bennett, were in close proximity to the spill
and observed the area. Thornton and Bennett testified it was part of their job to look for
spills in that area and clean them up. Thornton and Bennett both testified they had walked
through that area shortly before Wilkes' accident and did not see any eggs on the floor. 
Thornton said the eggs were bright yellow and it was a small amount. Bennett also said the
eggs were bright yellow, fluffy and soft, and a small amount, less than a tablespoon. 
Thornton testified she had served a family right before Wilkes came in and they sat at a table. 
She did not bus the table after they left because she was waiting on Wilkes. Thornton said
nothing was left on the table. Thornton recalled a man sitting at one of the tables, and
remembered the family sitting at the next table when he was there. 

 Wilkes argues the jury could infer from Woods' testimony the eggs were spilled
before Woods sat down and therefore were on the floor for at least twenty-five minutes. 
Brookshire Brothers contends that inference is unreasonable and relies on the testimony from
Thornton and Bennett that they checked the area minutes before Wilkes fell and did not see
anything on the floor. 

 While the Reece court allows that proximity of an employee may affect the jury's
determination of whether the owner should have noticed the condition, i.e., the actual length
of time required to infer constructive notice can be affected by the employee's proximity, it
rejects finding that proximity can supplant the time-notice rule. Woods' testimony, at best,
is evidence the eggs could have been on the floor twenty-five minutes. It is not evidence the
eggs were on the floor that long. There is no evidence as to how long the eggs were on the
floor.

 It was Wilkes' burden to establish it was more likely than not that Brookshire Brothers
should have been aware of the spill because it existed long enough to give Brookshire
Brothers a reasonable opportunity to discover and rectify it, or to warn about. Since Wilkes
failed to meet that burden, appellant's issue is sustained. Therefore, we reverse the trial
court's judgment and render judgment that Wilkes take nothing.

 REVERSED AND RENDERED.

 PER CURIAM

Submitted on October 1, 2004

Opinion Delivered November 18, 2004



Before McKeithen, C.J., Burgess and Gaultney, JJ.